UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
INTER-AMERICAN DEVELOPMENT BANK,          :
                                          :
         Plaintiff,                        :
                                          :   Case No.: 15-CV-04063 (PAE)
  v.                                      :
                                          :
VENTI S.A. and INDUSTRIAS                 :
METALÚRGICAS PESCARMONA S.A.I.C. Y F.,    :
                                          :
         Defendants.                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**PLAINTIFF INTER-AMERICAN DEVELOPMENT BANK'S
<u>MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**


Keith Sambur
Maria Lapetina
Richards Kibbe & Orbe LLP
200 Liberty Street
New York, New York 10281
(212) 530-1800

David W.T. Daniels
Jeffrey Lehtman
Richards Kibbe & Orbe LLP
The Portrait Building
701 8th Street, N.W.
Washington, D.C. 20001
(202) 261-2960

*Attorneys for Inter-American Development Bank*

**TABLE OF CONTENTS**

Page

I. FACTUAL BACKGROUND ................................................................................................1

    A. The Loan Agreement ........................................................................................1

    B. The Guarantee Agreements ..............................................................................3

    C. WPE's Event Of Default ..................................................................................5

    D. Venti's and IMPSA's Failure To Honor Their Guarantees ..............................6

    E. Procedural History ...........................................................................................7

II. STANDARD ON THIS MOTION ......................................................................................7

III. ARGUMENT .......................................................................................................................8

    A. Both Venti And IMPSA Are Liable Under The Guarantees ...........................8

    B. Defendants Have No Meritorious Defenses ...................................................10

        1. Defendants Have Waived All Affirmative Defenses .........................10

        2. No Factual Basis Exists For Any Of Defendants' Affirmative Defenses ...............................................................................................11

            a. Laches ....................................................................................12

            b. Estoppel .................................................................................12

            c. Unclean Hands ......................................................................14

            d. Waiver ...................................................................................14

            e. Sufficiency Of Notice ...........................................................15

            f. WPE's Judicial Reorganization Proceeding .........................15

IV. CONCLUSION ..................................................................................................................16

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Annenberg v. Calvo*,
  7 A.D.2d 263 (1st Dep't 2004) ................................................................................................12

*Bank of New York v. TRI Polyta Fin. B.V.*,
  No. 01-CIV-9104, 2003 WL 1960587 (S.D.N.Y. Apr. 25, 2003) ............................................11

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..................................................................................................................7

*Citicorp Leasing, Inc. v. United Am. Funding, Inc.*,
  No. 03-CIV-1586, 2005 WL 1847300 (S.D.N.Y. Aug. 5, 2005) ..........................................8, 9

*Credit Suisse First Boston Mortgage Capital LLC v. Cohn*,
  No. 03-CIV-6146, 2004 WL 1871525 (S.D.N.Y. Aug. 19, 2004) ..........................................15

*EMI Music Mktg. v. Avatar Records, Inc.*,
  317 F. Supp. 2d 412 (S.D.N.Y. 2004).....................................................................................11

*Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.*,
  No. 03-CIV-8554, 2008 WL 465169 (S.D.N.Y. Feb. 6, 2008) ...............................................11

*Fed. Deposit Ins. Corp. v. Schwartz*,
  78 A.D.2d 867 (2d Dep't 1980) ..............................................................................................11

*First Union Nat'l Bank v. Tecklenburg*,
  2 A.D.3d 575 (2d Dep't 2003) ................................................................................................12

*JSC Foreign Econ. Ass'n Technostroyexpoert v. Int'l Dev. & Trade Servs.*,
  386 F. Supp. 2d 461 (S.D.N.Y. 2005).....................................................................................14

*Kensington House Co. v. Oram*,
  293 A.D.2d 304 (1st Dep't 2002) .............................................................................................8

*Kluak v. City of New York*,
  88 F.3d 63 (2d Cir. 1996)........................................................................................................12

*Kopsidas v. Krokos*,
  294 A.D.2d 406 (2d Dep't 2002) ............................................................................................14

*Nassau Trust Co. v. Montrose Concrete Prods. Corp.*,
  56 N.Y.2d 175 (1982) .............................................................................................................14

*Orix Credit Alliance, Inc. v. Bell Realty, Inc.*,
   93-CIV-4949, 1995 WL 505891 (S.D.N.Y Aug. 23, 1995) ....................................................... 9

*Rapf v. Suffolk Cty. of New York*,
   755 F.2d 282 (2d Cir. 1985) ................................................................................................. 12

*Red Tulip LLC v. Neiva*,
   44 A.D.3d 204 (1st Dep't 2007) .......................................................................................... 10

*Sterling Nat'l Bank v. Biaggi*,
   849 N.Y.2d 521 (1st Dept't 2008) ................................................................................... 10, 11

*Sun Oil Co. v Heller*,
   248 N.Y. 28 (1928) ............................................................................................................. 13

*VW Credit, Inc. v. Big Apple Volkswagen, LLC*,
   No. 11-CIV-1950, 2012 WL 919386 (S.D.N.Y. Mar. 15, 2012) .......................................... 7, 8

**RULES**

Fed. R. Civ. P. 56 ....................................................................................................................... 7

Plaintiff Inter-American Development Bank ("Plaintiff" or the "IDB") hereby submits this memorandum of law in support of its motion for summary judgment under Fed. R. Civ. P. 56.  With this motion, the IDB respectfully requests that the Court enter judgment against Defendants Venti, S.A. ("Venti") and Industrias Metalúrgicas Pescarmona S.A.I.C. y F. ("IMPSA" and collectively "Defendants") for failing to honor their respective loan guarantees.  Venti and IMPSA each unconditionally guaranteed the repayment of loan obligations owed by Wind Power Energia S.A. ("WPE").  To date, WPE's outstanding loan balance – including unpaid principal, interest and late charges – totals $167,472,807.40.  Venti and IMPSA are jointly and severally responsible to repay this full amount.  Rather than complying with their contractual obligations, they admit that they have paid nothing.

Defendants have had a full and fair opportunity to conduct discovery to establish any defenses to excuse their failure to pay.  They have identified no legally sufficient reason for their failure to do so.  Defendants have instead proffered boilerplate affirmative defenses that were expressly waived in the parties' agreements and that lack any factual support.  No trial is necessary to determine liability on the unconditional guarantees, to dispose of Defendants' affirmative defenses or to measure damages.  The loan has been in default for more than a year, and no further delay in the enforcement of the guarantees is warranted.  The Court should accordingly grant this motion and enter judgment for the full amount due.

I. **FACTUAL BACKGROUND**

    A. **The Loan Agreement**

The IDB is an international institution owned by its forty-eight member countries, including the United States, Argentina, and Brazil.  The IDB was established pursuant to the Agreement Establishing the Inter-American Development Bank in 1959.  By deploying resources committed by its member states in a wide-range of financing activities, the IDB promotes

economic, social, and institutional growth and development in Latin America and the Caribbean. Since its creation in 1959, the IDB has become one of the largest sources of multilateral funding in Latin America and the Caribbean. The IDB utilizes the proceeds from such financing efforts to reinvest in other deserving projects in the region. Declaration of Hans Schulz ("Schulz Decl.") ¶ 1.

As part of its private-sector lending program, the IDB extended a loan facility of up to $150 million (the "Loan") to WPE to finance four wind-energy projects located in Brazil and Uruguay. *Id*. ¶ 3. The Loan was documented by an agreement between the IDB and WPE dated December 9, 2011 (the "Loan Agreement"). *Id.* ¶ 3; Ex. A. Pursuant to the terms of the Loan Agreement, WPE promised to pay the IDB interest on principal borrowed on a semiannual basis starting in February 2012. It further promised to make ten principal payments on a semiannual basis starting on February 15, 2015 and extending through to August 15, 2019. *Id*., Ex. A (Loan Agreement §§ 3.03, 3.22).[1] To the extent that any such interest or principal remained unpaid when due, WPE agreed to pay an additional 2% interest surcharge per annum over and above the contracted interest rate (the "Late Charges"). *Id*., Ex. A (Loan Agreement § 3.12).

WPE borrowed the entire $150 million under the Loan Agreement in two tranches. The IDB disbursed an initial tranche of $100,000,000 to WPE, which was memorialized in a promissory note dated December 9, 2011. *Id*., Ex. D. On May 9, 2012, the IDB disbursed an additional $50,000,000, which was memorialized in a separate promissory note. *Id*., Ex. E. The full $150,000,000 in Loan principal remains outstanding. Declaration of Maria E. Lapetina ("Lapetina Decl."), Ex. A (Answer ¶ 4).

---

[1] "Interest Payment Date," is defined as "February 15 and August 15 of each year." Schulz Decl., Ex. A (Loan Agreement § 1.01).

2

B.     The Guarantee Agreements

As a precondition for extending the Loan, the IDB required that WPE's parent company guarantee repayment of the Loan. Schulz Decl. ¶ 5. At the time the Loan Agreement was executed, WPE was a subsidiary of IMPSA. *Id.* Accordingly, on December 9, 2011 IMPSA entered into a guarantee agreement with the IDB (the "IMPSA Guarantee"). *Id.*, Ex. B. As consideration, IMPSA specifically acknowledged that it "obtain[ed] benefits as a result of the Loan being made to the Borrower." *Id.*, Ex. B (IMPSA Guarantee at 1).

Under the terms of the IMPSA Guarantee, IMPSA promised to "unconditionally guarantee[] to IDB, as a primary obligor and not merely as a surety, the due and punctual payment and performance of the Guaranteed Obligations." *Id.*, Ex. B (IMPSA Guarantee § 2(a)). The IMPSA Guarantee defines "Guaranteed Obligations" as "the due and punctual payment by the Borrower of (i) the principal of and premium, if any, and interest … on the Loan, when and as due, whether at maturity, by acceleration, upon one or more dates set for prepayment or otherwise, and (ii) all other monetary obligations, including fees, costs, expenses and indemnities … of the Borrower pursuant to the Loan Agreement." *Id.*, Ex. B (IMPSA Guarantee at 2).[2] In its agreement, IMPSA further acknowledged as follows:

> [The IMPSA Guarantee] constitutes a guarantee of payment when due (whether at the stated maturity, by acceleration or otherwise) and not of collection and constitutes an additional, separate and independent

---

[2] IMPSA also promised to "pay … all out-of-pocket expenses incurred by IDB in connection with enforcement, collection or any other exercise of remedies under this Guarantee Agreement, including attorneys' fees, advertising costs, fees and expenses of advisors and investment bankers and other experts …. All sums so paid or incurred by IDB for any of the foregoing, any and all other sums for which the Guarantor may become liable hereunder and all such costs and expenses incurred by IDB in enforcing or protecting any of the rights or remedies of IDB under this Guarantee Agreement shall be payable by the Guarantor on demand, shall constitute Guaranteed Obligations and shall bear interest until paid." Schulz Decl., Ex. B (IMPSA Guarantee § 16.09).

3

> obligation of the Guarantor which will survive the termination of any or all of the Financing Documents and any other agreement or instrument pursuant to which any Guaranteed Obligation is or may become outstanding.

*Id.*, Ex. B (IMPSA Guarantee § 4).

On January 30, 2014, Venti executed a separate unconditional guarantee of the Loan (the "Venti Guarantee"). *Id.*, ¶ 6; Ex. C. It did so following a corporate reorganization pursuant to which Venti became WPE's new parent. *Id*. ¶ 6. This second guarantee was expressly required under Section 6.02(a)(iv) of the Loan Agreement. *Id.*, ¶ 6; Ex. C. (Venti Guarantee at 1) ("By virtue of Section 6.02(a)(iv) of the Loan Agreement, in the case a Corporate Reorganization is executed, the corporate entity Controlling the Borrower shall guarantee all Guaranteed Obligations ….").

Like IMPSA, Venti also "unconditionally guarantee[d], as a primary obligor and not merely as a surety, the due and punctual payment and performance of the Guaranteed Obligations," defined as "the principal of and premium, if any, and interest … on the Loan, when and as due, whether at maturity, by acceleration, upon one or more dates set for prepayment or otherwise, and (ii) all other monetary obligations." *Id.*, Ex. C (Venti Guarantee §§ 1.02, 2(a)). Venti further acknowledged as follows:

> [The Venti Guarantee] constitutes a guarantee of payment when due (whether at the stated maturity, by acceleration or otherwise) and not of collection and constitutes an additional, separate and independent obligation of the Guarantor which will survive the termination of any or all of the Financing Documents and any other agreement or instrument pursuant to which any Guaranteed Obligation is or may become outstanding.

*Id*., Ex. C (Venti Guarantee § 4).[3]

---

[3] Like IMPSA, Venti also agreed to pay all out-of-pocket expenses made in an effort to enforce the Loan Agreement. Schulz Decl., Ex. C (Venti Guarantee § 16.09).

4

Both Venti and IMPSA waived all defenses as set forth in Sections 5 and 6 of their respective guarantee agreements. Each such agreement specifically stated as follows:

> [The Guarantor's Obligations] shall not be subject to any reduction, limitation, impairment or termination for any reason, including any claim of waiver, release, surrender, alteration or compromise, and shall not be subject to <u>any</u> defense or setoff, counterclaim, recoupment or termination <u>whatsoever</u> by reason of the invalidity, illegality or unenforceability of the Guaranteed Obligations <u>or otherwise</u> (other than defense of payment or performance).

*Id*., Exs. B, C (IMPSA Guarantee § 5; Venti Guarantee § 5) (emphasis added).

For the avoidance of doubt, Venti and IMPSA also agreed to "waive[] <u>any</u> defense to the enforcement hereof by reason of … <u>any other circumstance</u> …." *Id.*, Exs. B, C (IMPSA Guarantee § 5(a)(ix); Venti Guarantee § 5(a)(ix)) (emphasis added). They further specifically agreed to waive any defense by reason of "any insolvency, bankruptcy, reorganization or other similar proceeding affecting the Borrower …." *Id.*, Exs. B, C (IMPSA Guarantee § 5(a)(vi); Venti Guarantee § 5(a)(vi)).

### C. WPE's Event Of Default

WPE paid the first five required interest payments from February 15, 2012 through February 15, 2014. Schulz Decl. ¶ 10. On August 15, 2014, however, WPE failed to make a sixth interest payment in the amount of approximately $4.4 million. Schulz Decl. ¶ 12. This failure to pay interest constituted an Event of Default under the Loan Agreement. *Id*., Ex. A (Loan Agreement § 7.02(a)) ("It shall be an Event of Default if … [a]ny Obligor fails to pay when due (whether at stated maturity or otherwise) any principal of or interest on, the Loan.").

On August 20, 2014, the IDB sent WPE a notice of default to inform WPE that an Event of Default had occurred and was then continuing as a result of WPE's failure to make its interest payment. *Id*. ¶ 10; Ex. F. WPE failed to make any payment in response to the notice of default. *Id*. ¶ 12. Accordingly, on August 27, 2014, the IDB sent WPE an acceleration notice, advising

5

that the IDB was "declar[ing] the Loan and all other Obligations to become immediately due and payable; and … demand[ing] the immediate payment of the Loan." *Id*. ¶ 11; Exs. G, H.[4]

The IDB sent this acceleration notice pursuant to § 7.01(a)(ii) of the Loan Agreement, which provides as follows:

> If an Event of Default occurs and is continuing … IDB may, by notice to the Borrower … declare the Loan or such part of the Loan as is specified in the notice (with accrued interest thereon) and all other Obligations to be due and payable forthwith, whereupon the same shall become immediately due and payable without any further notice and without any present, demand, protect or notice of any kind, all of which are hereby expressly waived by the Borrower.

*Id*., Ex. A (Loan Agreement § 7.01(a)(ii)).

Following acceleration of the Loan, WPE made no further payments of any kind under the Loan Agreement. *Id*. ¶ 12. Instead, on December 8, 2014, WPE commenced a judicial reorganization proceeding in Brazil. *Id*. ¶ 12. As of the date of this memorandum, WPE owes the IDB $167,472,807.40. *Id*. ¶ 16. Interest and Late Charges continue to accrue under the terms of the Loan Agreement. *Id.* ¶ 17.

### D. Venti's and IMPSA's Failure To Honor Their Guarantees

On August 27, 2014 and December 9, 2014, the IDB formally requested that IMPSA honor its guarantee and pay all amounts owed by WPE. Schulz Decl. ¶¶ 11,13; Exs. G, I. On these dates, the IDB sent IMPSA letters demanding the immediate payment of outstanding amounts payable by WPE. *Id*., Exs. G, I. The IDB sent Venti a similar letter, demanding immediate payment of all outstanding amounts. *Id*., Ex. J. Venti and IMPSA made no payments in response to either notice and admit that they have paid nothing to date on their respective guarantees. Lapetina Decl., Ex. A (Answer ¶ 23).

---

[4] The Loan Agreement defines "Obligations" as "the unpaid amount of principal of and interest on the Loan … and all other obligations and liabilities of the Borrower to the IDB under this Agreement." Schulz Decl., Ex. A (Loan Agreement § 1.01).

6

### E. Procedural History

On May 27, 2015, the IDB filed its complaint in this action. As permitted under the terms of the IMPSA and Venti Guarantees, the IDB served Defendants with process through their corporate agents in New York on May 28, 2015.[5] Defendants' counsel appeared to defend the action and subsequently filed an Answer on July 6, 2015. *Id.*, Ex. A. Counsel for the parties appeared for a preliminary conference on July 20, 2015, at which the Court set a case management plan that permitted each side to propound discovery on an accelerated basis. Lapetina Decl., Ex. B. Such discovery is now complete, and there are no open discovery disputes or pending discovery requests. Lapetina Decl. ¶ 6.

## II.   STANDARD ON THIS MOTION

Summary judgment is warranted where, as here, there is no genuine issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the moving party makes this initial showing, the burden shifts to the nonmoving party to "make a sufficient showing on an essential element of [the] case with respect to which [it] has the burden of proof." *Id.*

As this Court has previously held, "[o]n a motion for summary judgment to enforce an unconditional guaranty, the creditor must prove [i] the existence of the guaranty, [ii] the underlying debt and [iii] the guarantor's failure to perform under the guaranty." *VW Credit, Inc.*

---

[5] On July 13, 2015, IMPSA was also served, pursuant to the Hague Convention, in Buenos Aires, Argentina. On August 7, 2015, both Venti and IMPSA were served, pursuant to the Hague Convention, in Mendoza, Argentina. Neither IMPSA nor Venti has contested venue, personal jurisdiction or sufficiency of service in this action.

7

*v. Big Apple Volkswagen, LLC*, No. 11-CIV-1950, 2012 WL 919386, at *4 (S.D.N.Y. Mar. 15, 2012) (Engelmayer, J.) (quoting *Davimos v. Halle*, 35 A.D.3d 270, 272 (1st Dep't 2006)); *see also Kensington House Co. v. Oram*, 293 A.D.2d 304, 305 (1st Dep't 2002) (granting summary judgment on a written guarantee where plaintiff demonstrated the existence of an unconditional guarantee, the underlying debt and guarantor's failure to perform). Once plaintiff establishes a *prima facie* case, the burden shifts to defendants to "assert a meritorious defense for which a genuine issue of material fact exists." *Citicorp Leasing, Inc. v. United Am. Funding, Inc.*, No. 03-CIV-1586, 2005 WL 1847300, at *4 (S.D.N.Y. Aug. 5, 2005).[6]

### III. ARGUMENT

#### A. Both Venti And IMPSA Are Liable Under The Guarantees.

The uncontested facts establish that IMPSA and Venti entered into absolute and unconditional guarantees, that WPE's underlying debt remains due and owing and that IMPSA and Venti have failed to perform under their respective guarantees. *VW Credit, Inc.*, 2012 WL 919386, at *4.

First, it is uncontested that both Venti and IMPSA executed absolute and unconditional guarantees. Both Venti and IMPSA expressly promised to "unconditionally guarantee[] to IDB, as a primary obligor and not merely as a surety, the due and punctual payment and performance of the Guaranteed Obligations." Schulz Decl., Exs. B, C (IMPSA Guarantee § 2(a); Venti Guarantee § 2(a)). IMPSA and Venti further agreed as follows:

> [T]he guarantee hereunder constitutes a guarantee of payment when due (whether at the stated maturity, by acceleration or otherwise) and not of collection and constitut[e] an additional, separate and independent obligation of the Guarantor

---

[6] With respect to the IDB's contractual entitlement to attorney's fees and expenses of enforcement, the IDB will submit an appropriate motion pursuant to Fed. R. Civ. P. 54(b)(2) following entry of judgment.

8

>which will survive the termination of any or all of the Financing Documents and
>any other agreement or instrument pursuant to which any Guaranteed Obligation
>is or may become outstanding.

*Id*., Exs. B, C (IMPSA Guarantee § 4; Venti Guarantee § 4). Defendants have proffered no evidence and made no argument suggesting that the guarantees are, in any way, invalid or unenforceable.

Second, it is uncontested that the Loan remains unpaid. The full amount of the Loan became due and owing on August 27, 2014 following WPE's default and the IDB's acceleration. Schulz Decl. ¶ 11; Ex. G. The IDB had every right to accelerate the Loan as a result of WPE's continuing and uncured failure to make a $4.4 million interest payment that was then due. IDB timely sent WPE a notice of default informing WPE of its default as required by the Loan Agreement. *Id*., Ex. F. WPE did not cure the default, and the IDB specifically advised WPE, IMPSA and Venti that it was "declar[ing] the Loan and all other Obligations to become immediately due and payable …." *Id*., Ex. G. Over the ensuing months, WPE repaid no principal. *Id*. ¶ 12. It also made no further interest payments. *Id.* To date, a total of $167,472,807.40 is due and owing under the Loan Agreement. *Id.* ¶ 16. Interest and Late Charges continue to accrue.

Third, Venti and IMPSA have failed to honor their guarantees to repay the amounts owed by WPE. As Defendants themselves admit, "Defendants have not paid anything to Plaintiff." Lapetina Decl., Ex. A (Answer ¶ 23).

These uncontroverted facts establish the IDB's *prima facie* case. *Orix Credit Alliance, Inc. v. Bell Realty, Inc.*, 93-CIV-4949 (LAP), 1995 WL 505891, at *3 (S.D.N.Y Aug. 23, 1995). The burden now shifts to Defendants to "assert a meritorious defense for which a genuine issue of material fact exists." *Citicorp Leasing Inc.*, 2005 WL 1847300, at *4. Defendants have not and cannot establish any such meritorious defenses.

9

### B. Defendants Have No Meritorious Defenses.

#### 1. Defendants Have Waived All Affirmative Defenses.

In their Answer, Venti and IMPSA allege four generic affirmative defenses: laches, estoppel, unclean hands and waiver. Lapetina Decl., Ex. A (Answer at 7). Defendants further allege by way of defense that the IDB "may have failed" to provide proper notices to Defendants and that WPE's debt has been included in WPE's judicial reorganization. *Id.* These defenses are legally insufficient because Venti and IMPSA expressly waived them in their respective guarantees. Venti and IMPSA each agreed in their respective guarantees as follows:

> The obligations of the Guarantor … shall not be subject to any reduction, limitation, impairment or termination for any reason, including any claim of waiver, release, surrender, alteration or compromise, and <u>shall not be subject to any defense</u> or setoff, counterclaim, recoupment or termination <u>whatsoever</u> by reason of the invalidity, illegality or unenforceability of the Guaranteed Obligations or otherwise (other than defense of payment or performance).

Schulz Decl., Exs. B, C (IMPSA Guarantee § 5(a); Venti Guarantee § 5(a) (emphasis added)).

Venti and IMPSA further agreed, among other things, to "waive[] <u>any</u> defense to the enforcement hereof by reason of … <u>any other circumstance</u> (including statute of limitations) or any existence of or reliance on any representation by IDB that might otherwise constitute a defense to, or a legal or equitable discharge of, the Borrower, the Guarantor, any other guarantor or surety." *Id.*, Exs. B, C (IMPSA Guarantee § 5(a); Venti Guarantee § 5(a)).

These contractual waivers preclude the assertion of any of the generic affirmative defenses that Venti and IMPSA offer to excuse their failure to comply with the guarantees. Those affirmative defenses are therefore each legally defective as a matter of law. *Red Tulip LLC v. Neiva*, 44 A.D.3d 204, 209 (1st Dep't 2007) (finding that guaranty language that waived all defenses and counterclaims except "actual payment" barred defenses of bad faith, waiver, estoppel and unclean hands); *Sterling Nat'l Bank v. Biaggi*, 849 N.Y.S.2d 521, 522 (1st Dept'

10

2008) (holding that by executing an irrevocable waiver of any right to assert a defense, guarantor had waived the right to a claim of laches); *Fed. Deposit Ins. Corp. v. Schwartz*, 78 A.D.2d 867, 868 (2d Dep't 1980) (holding that defense of laches fails as a matter of law when defendant signed an unconditional guarantee with a waiver of defenses); *Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.*, No. 03-CIV-8554, 2008 WL 465169, at *5 (S.D.N.Y. Feb. 6, 2008) (holding that defendant in a loan guarantee waived affirmative defenses, including estoppel, waiver, ratification, laches and recoupment).

Indeed, the unconditional nature of the IMPSA and Venti Guarantees in and of itself operates to preclude Defendants' affirmative defenses as a matter of law. This is because, under New York law, a clear, unambiguous, and unconditional guarantee "bar[s] the assertion of affirmative defenses." *Bank of New York v. TRI Polyta Fin. B.V.*, No. 01-CIV-9104, 2003 WL 1960587, at *4 (S.D.N.Y. Apr. 25, 2003) (quoting *URSA Minor Ltd. v. AON Fin. Prods.*, No. 00-CIV-2474, 2000 WL 1010278, at *8 (S.D.N.Y. July 21, 2000); *EMI Music Mktg. v. Avatar Records, Inc.*, 317 F. Supp. 2d 412, 419 (S.D.N.Y. 2004) (barring defendant from asserting affirmative defenses even though unconditional guarantee did not contain language expressly waiving defenses).

The affirmative defenses offered here therefore present no impediment to entry of summary judgment against Venti and IMPSA on their unconditional guarantees.

### 2. No Factual Basis Exists For Any Of Defendants' Affirmative Defenses.

Defendants' affirmative defenses fail for a further reason: they lack any factual foundation whatsoever. Defendants have failed to come forward with any evidence whatsoever showing a triable issue of fact as to any defense, despite document requests and interrogatories requiring them to do so. Lapetina Decl. ¶ 5. Defendants have offered only vague and conclusory

allegations in support of their defense. Defendants cannot avoid summary judgment using "conclusory statements, conjecture or speculation." *Kluak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). Consideration of each defense in turn reveals the deficiency.

### a. Laches

Laches is an equitable defense and is not a defense to a claim at law. It is thus irrelevant to the enforcement of a loan guarantee. *Annenberg v. Calvo*, 7 A.D.2d 263, 264 (1st Dep't 2004) ("laches is not available in an action at law").

Defendants, moreover, have proffered no evidence to support a laches defense. To establish such a defense, Defendants must demonstrate: (1) delay in asserting a claim despite the opportunity to do so; (2) lack of knowledge on the defendant's part that a claim would be asserted; and (3) prejudice to the defendant by the allowance of the claim. *Rapf v. Suffolk Cnty. of New York*, 755 F.2d 282, 292 (2d Cir. 1985). Defendants have shown no evidence that they have suffered any prejudice from a delay in the enforcement of the IDB's rights. Plaintiff specifically asked Defendants to identify the evidence supporting this defense, but Defendants failed to come forward with any evidence showing prejudice. *See* Lapetina Decl., Ex. F (Defs' Interrogatory Response No. 1). If anything, the short interlude between WPE's default and the filing of this lawsuit has only worked to Defendants' advantage by delaying payment on their outstanding obligations. The laches defense is without merit.

### b. Estoppel

Defendants have identified no factual basis for an estoppel defense. To prove estoppel, Defendants must show the following: (1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts. *First Union Nat'l Bank v. Tecklenburg*, 2 A.D.3d 575,

577 (2d Dep't 2003). Defendants have identified no evidence supporting any of these elements. Lapetina Decl., Ex. F (Defs' Interrogatory Response No. 3).

Instead, Defendants assert only that they received "no consideration for allegedly guaranteeing the subject Loan Agreement." Lapetina Decl., Ex. F (Defs' Interrogatory Response No. 2). This argument has nothing to do with an estoppel defense and is, moreover, irresponsible. Both IMPSA and Venti received an enormous benefit through the IDB's $150 million loan to their affiliate. The IMPSA Guarantee itself recites that "[t]he Guarantor will obtain benefits as a result of the Loan being made to the Borrower." Schulz Decl., Ex. B (IMPSA Guarantee at 1). The Venti Guarantee acknowledges in the recitals of its "Whereas" clause that "[b]y virtue of section 6.02(a)(iv) of the Loan Agreement, in the case a Corporate Reorganization is executed, the corporate entity Controlling the Borrower shall guarantee all Guaranteed Obligations." *Id*., Ex. C (Venti Guarantee at 1). Venti further recited that "[t]he Guarantor desires to guarantee the Guaranteed Obligations in order to comply with … Recital B." *Id.* In other words, both Venti and IMPSA each admit in their respective guarantees that they received sufficient consideration for the promises to pay.

New York law holds that the guarantor receives the benefit of the underlying act in exchange for the guarantee. *Sun Oil Co. v Heller*, 248 N.Y. 28, 32-33 (1928) ("where one party agrees with another party that, if such party for a consideration performs a certain act for a third person, he will guarantee payment of the consideration by such person, the act specified is impliedly requested by the guarantor to be performed and, when performed, constitutes a consideration for the guaranty"). Therefore, Defendants have offered no support for any estoppel defense or argument that their guarantees lacked consideration.

### c. Unclean Hands

The defense of unclean hands is not a defense to a claim at law and hence is irrelevant to this case. *JSC Foreign Econ. Ass'n Technostroyexpoert v. Int'l Dev. & Trade Servs. Inc.*, 386 F. Supp. 2d 461 (S.D.N.Y. 2005).

Moreover, to establish the defense of unclean hands, Defendants must show that Plaintiff is "guilty of immoral, unconscionable conduct and even then only when the conduct relied on is directly related to the subject matter in litigation and the party seeking to invoke the doctrine was injured by such conduct." *Kopsidas v. Krokos*, 294 A.D.2d 406, 407 (2d Dep't 2002) (internal citations omitted).  In their interrogatory responses, Defendants have proffered no evidence of unclean hands.  Instead, Defendants merely reiterate their incorrect assertion that Defendants received no consideration for guaranteeing the Loan.  Lapetina Decl., Ex. F (Defs' Interrogatory Response No. 3).  The unclean hands defense accordingly has no factual basis.

### d. Waiver

To establish a waiver defense, Defendants must show a "voluntary and intentional abandonment of a known right which, but for the waiver, would have been enforceable." *Nassau Trust Co. v. Montrose Concrete Prods. Corp.*, 56 N.Y.2d 175 (1982).  Defendants have offered no evidence to support any such defense.  In their interrogatory responses, Defendants stated only that they had not yet received in discovery "an executed copy of the subject Loan Agreement or IMPSA Guarantee." Lapetina Decl., Ex. F (Defs' Interrogatory Response No. 4).  It is uncontested, however, that IMPSA and Venti did sign their respective guarantees.  Signed copies of those documents have been produced in discovery and are submitted with this motion.  Schulz Decl., Exs. A, B, C.

### e. Sufficiency Of Notice

Defendants allege generally that Plaintiff failed to provide proper demands and/or notices to Defendants. Again, there is no factual basis for this defense. It is uncontested that the IDB provided the requisite notice to WPE prior to accelerating the Loan. *Id.* ¶ 11; Exs. H, I.[7] There is no separate requirement to provide notice to IMPSA or Venti to enforce the guarantees. In any event, the IDB did send multiple notices to IMPSA and Venti before initiating this lawsuit. Schulz Decl. ¶¶ 11, 13-14; Exs. G, I, J. Defendants have no defense based on insufficient notice.

### f. WPE's Judicial Reorganization Proceeding

Finally, Defendants suggest that WPE's judicial reorganization proceeding provides a reason to delay enforcement of the guarantees. Lapetina Decl., Ex. A (Answer ¶ 22). The law is clear, however, that an unconditional guarantee of payment – such is at issue here – may be enforced notwithstanding a judicial reorganization proceeding. *See, e.g.*, *Credit Suisse First Boston Mortgage Capital LLC v. Cohn*, No. 03-CIV-6146, 2004 WL 1871525, at *8 (S.D.N.Y. Aug. 19, 2004) ("A discharge of liability pursuant to the bankruptcy laws generally does not affect a guarantor's liability and leaves a creditor free to pursue collection from a guarantor."). Indeed, the parties specifically agreed that the guarantees could be enforced notwithstanding the commencement of any judicial reorganization proceeding by WPE. Schulz Decl., Exs. B, C (IMPSA Guarantee § 5(a)(iv); Venti Guarantee § 5(a)(iv)). The Court should therefore reject this final proffered defense.

---

[7] Further, the Loan was automatically accelerated following WPE's judicial reorganization proceeding. Section 7.03 of the Loan Agreement specifically provides that in the event of such a proceeding "the principal of the Loan then outstanding, together with accrued interest thereon and all fees and other Obligations outstanding, shall automatically become immediately due and payable, <u>without any</u> presentment, demand, protest or <u>notice of any kind</u>, all of which the Borrower hereby waives." Schulz Decl., Ex. A (Loan Agreement § 7.03) (emphasis added).

IV.     **CONCLUSION**

The Court should enter judgment against Venti and IMPSA in the amount of $167,472,807.40 together with such additional prejudgment interest, Late Charges or other amounts as may accrue between the date of this motion and the entry of judgment.[8]  The Court should also award the IDB attorneys' fees, costs and expenses relating to the enforcement of the guarantees, proof of which will be submitted by separate motion, pursuant to Fed. R. Civ. P. 54.

Dated: New York, New York
       August 28, 2015

RICHARDS KIBBE & ORBE LLP

By: /s/ David W. T. Daniels
    Keith N. Sambur (ksambur@rkollp.com)
    Maria E. Lapetina (mlapetina@rkollp.com)
    200 Liberty Street
    New York, NY 10281
    Telephone: (212) 530-1800
    Facsimile: (212) 530-1801

-and-

David W.T. Daniels (admitted *pro hac vice*)
(ddaniels@rkollp.com)
Jeffrey A. Lehtman (admitted *pro hac vice*)
(jlehtman@rkollp.com)
Portrait Building,
701 8th Street, NW
Washington, DC  20001-3727
Telephone: (202) 261-2960
Facsimile: (202) 261-2999

*Attorneys for Plaintiff Inter-American Development Bank*

---

[8]  The IDB respectfully requests the opportunity to submit an updated accounting prior to entry of judgment showing any additional accrued interest or late fees.

16