UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

INTER-AMERICAN DEVELOPMENT BANK,

                       Plaintiff,

          -v-

VENTI S.A., and INDUSTRIAS METALURGICAS
PESCARMONA S.A.I.C. Y.F.,

                       Defendants.

------------------------------------------------------------------------X

15 Civ. 4063 (PAE)

<u>OPINION & ORDER</u>

**PAUL A. ENGELMAYER, District Judge:**

This decision resolves an unopposed motion for attorneys' fees and other expenses by plaintiff Inter-American Development Bank ("IDB"). The IDB seeks to recover the costs it incurred in attempting to enforce and collect on a $150 million loan guaranteed by defendants Venti S.A. ("Venti") and Industrias Metalurgicas Perscarmona S.A.I.C. Y.F. ("IMPSA"). For the following reasons, the Court awards, in substantial part, the requested fees and costs, with some reductions.

## I.    Background

### A.  Facts[1]

In December 2011, the IDB agreed to extend a loan facility of up to $150 million—the full amount of which was ultimately disbursed—to Wind Power Energia S.A. ("WPE"), a Brazilian company, as part of the IDB's private-sector lending program for financing wind-power production projects in Brazil and Uruguay. Schulz Decl. ¶¶ 3–4; *see also id.*, Ex. A

---

[1] These facts are drawn primarily from the Declaration of Hans Schulz submitted in support of the IDB's motion for summary judgment. Dkt. 26 ("Schulz Decl."). These facts have not been contested, as defendants did not oppose that motion, *see* Dkt. 29, or the instant motion.

("Loan Agreement"). As a precondition for extending this loan, the IDB required that WPE's parent company, IMPSA, guarantee repayment of the loan. *Id.* ¶ 5; *see also id.*, Ex. B ("IMPSA Guarantee"). In 2014, after Venti became WPE's new parent company, Venti executed a separate unconditional guarantee. *Id.* ¶ 6; *see also id.*, Ex. C ("Venti Guarantee"). Pursuant to these Guarantees, IMPSA and Venti agreed to pay "all out-of-pocket expenses incurred by IDB in connection with enforcement, collection or any other exercise of remedies under [the] Guarantee Agreement, including attorneys' fees, advertising costs, fees and expenses of advisors and investment bankers and other experts." IMPSA Guarantee § 16.09; Venti Guarantee § 16.09. Separately, both Venti and IMPSA agreed to pay "the Guaranteed Obligations," *see id.* § 2, a defined term including the principal on the loan, interest and fees, and "all other monetary obligations" of WPE under the Loan Agreement, *see id.* § 1.02. In turn, the Loan Agreement obligated WPE—and ultimately its guarantors, IMPSA and Venti—to pay "the documented costs and expenses incurred by IDB in relation to . . . the exercise of its rights or powers consequent upon or arising out of the occurrence of any Default, including legal and other professional consultants' fees." Loan Agreement ¶ 3.21(d).

On August 15, 2014, WPE failed to make a $4.4 million interest payment, thus defaulting on the loan. Schulz Decl. ¶¶ 10–12; *see also* Loan Agreement § 7.02(a) ("It shall be an Event of Default if . . . [a]ny Obligor fails to pay when due . . . any principal of or interest on, the Loan."). On August 27, 2014, after giving WPE an opportunity to cure the default, the IDB accelerated the full amount due on the loan. Schulz Decl. ¶ 11. Since that time, WPE has made no further payments under the Loan Agreement, *id.* ¶ 12, and IMPSA and Venti have made no payments on their respective Guarantees, *id.* ¶ 15.

As part of its effort to collect on and enforce the loan and the Guarantees, the IDB has retained counsel in the United States, Brazil, and Argentina. Dkt. 80 ("Lapetina Decl."), at ¶ 2. Specifically, the IDB retained the firm of Costa Waisberg Tavares Paes ("CWTP") in Brazil. *Id.* ¶ 3. After Mr. Waisberg, the partner in charge of this matter, left CWTP and joined the firm of Dias Carneiro, Arystobulo, Flores, Sanches, Thomaz Bastos Advogados ("DCA"), the IDB engaged that firm. *Id.* ¶ 4. In Argentina, the IDB retained Bruchou, Fernandez Madero & Lombardi ("BFML"). *Id.* ¶ 5. In the United States, the IDB initially retained Clifford Chance, *id.* ¶ 6, and later retained Richards Kibbe & Orbe LLP ("RKO"), its current local counsel, *id.* ¶ 7. In addition, the IDB incurred $120,055.02 in travel-related expenses in connection with various meetings with counsel in Brazil and Argentina. Dkt. 37 ("Jeronimides Decl."), ¶ 6. As of September 30, 2015, the IDB represented that it has paid or will pay a total of $909,459.57 in attorneys' fees and other costs associated with attempting to enforce the Loan Agreement and Guarantees, including bringing suit in this Court. *See* Jeronimides Decl. ¶ 7.

**B. Procedural History**

On May 27, 2015, the IDB filed a Complaint against Venti and IMPSA alleging breach of the Guarantees. Dkt. 1. On August 28, 2015, the IDB moved for summary judgment. Dkt. 23. On September 14, 2015, after learning that defendants did not intend to oppose that motion, *see* Dkt. 29, Ex. A, the Court granted summary judgment for the IDB, Dkt. 30. On September 16, 2015, a clerk's judgment in the amount of $168,172,809.92—reflecting principal, interest, and late fees—was entered. Dkt. 34.

On September 30, 2015, the IDB moved for attorneys' fees and costs, Dkt. 35, and filed a supporting memorandum of law, Dkt. 36 ("IDB Br."), as well as the declaration of H. Rosemary Jeronimides, Dkt. 37, and attached exhibits. On October 6, 2015, the Court extended defendants'

time to oppose the motion until November 17, 2015, in light of defendants' need for additional

time to find new counsel. Dkt. 41. On November 18, 2015, the IDB filed a letter stating that no

opposition had been filed and asking the Court to treat the motion as unopposed. Dkt. 51. On

December 17, 2015, the Court directed the IDB to provide the Jeronimides declaration to the

Court in unredacted form by mail or email, which the IDB later did. Dkt. 52.

## II.   Legal Standards Applicable to Attorneys' Fees Motions

"Under New York law, a contract that provides for an award of reasonable attorneys' fees

to the prevailing party in an action to enforce the contract is enforceable if the contractual

language is sufficiently clear." *Metro Found. Contractors, Inc. v. Arch Ins. Co.*, 551 F. App'x

607, 610 (2d Cir. 2014) (summary order) (quoting *NetJets Aviation, Inc. v. LHC Comms., LLC*,

537 F.3d 168, 175 (2d Cir. 2008)) (internal quotation marks omitted).[2] Thus, "when a contract

provides that in the event of litigation the losing party will pay the attorneys' fees of the

prevailing party, the court will order the losing party to pay whatever amounts have been

expended by the prevailing party, so long as those amounts are not unreasonable." *Diamond D*

*Enters. USA, Inc. v. Steinsvaag*, 979 F.2d 14, 19 (2d Cir. 1992) (quoting *F.H. Krear & Co. v.*

*Nineteen Named Trs.*, 810 F.2d 1250, 1263 (2d Cir. 1987)) (internal quotation marks omitted).

The starting point for determining the presumptively reasonable fee award is "the product

of a reasonable hourly rate and the reasonable number of hours required by the case."[3] *Gaia*

*House Mezz LLC v. State St. Bank & Trust Co.*, No. 11 Civ. 3186 (TPG), 2014 WL 3955178, at

*1 (S.D.N.Y. Aug. 13, 2014) (quoting *Millea v. Metro–North R.R. Co.*, 658 F.3d 154, 166 (2d

---

[2] The Guarantees provide that they shall be governed by New York state law. *See* IMPSA
Guarantee § 17(a); Venti Guarantee § 17(a).

[3] Courts do not always expressly rely on this "lodestar" method in contractual fee-shifting cases,
*see HSH Nordbank AG N.Y. Branch v. Swerdlow*, No. 08 Civ. 6131 (DLC), 2010 WL 1141145,
at *6 n.9 (S.D.N.Y. Mar. 24, 2010), but it remains a useful guide.

Cir. 2011)) (internal quotation marks omitted).  As to the reasonable hourly rate, the Court's analysis is guided by the market rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  The relevant community is this District.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190–91 (2d Cir. 2008).

> The Court is also to consider, *inter alia*:
>
> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 493 F.3d 110, 114 n.3, 117–18 (2d Cir. 2007) (citing *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008).  The Court "should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* at 118.

"[T]he fee applicant . . . bear[s] the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed." *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011) (internal quotation marks and citation omitted).  To that end, the fee application must be supported by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

A claimant is only to be compensated for "hours reasonably expended on the litigation," and not for "hours that are excessive, redundant, or otherwise unnecessary." *Hensley v.*

*Eckerhart*, 461 U.S. 424, 433–34 (1983). If the number of hours stated is disproportionate to the work performed, the Court should reduce the stated hours accordingly. *See Seitzman v. Sun Life Assurance Co. of Can.*, 311 F.3d 477, 487 (2d Cir. 2002). Where it is difficult for the Court to make line-item reductions to adjust for excessive billing, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)) (internal quotation marks omitted). The Court is not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994).

Finally, "[a]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (internal quotation marks omitted). As with attorneys' fees, the requesting party must substantiate the request for costs. *See CJ Prods. LLC v. Your Store Online LLC*, No. 11 Civ. 9513 (GBD), 2012 WL 4714820, at *2 (S.D.N.Y. Oct. 3, 2012) (denying reimbursement for undocumented costs). Court fees reflected on the Court's docket are sufficiently substantiated, as are costs for which a claimant provides extrinsic proof, such as invoices or receipts. *See Abel v. Town Sports Int'l LLC*, No. 09 Civ. 10388 (DF), 2012 WL 6720919, at *34 (S.D.N.Y. Dec. 16, 2012). A sworn statement or declaration under penalty of perjury that certain amounts were expended on particular items is also sufficient. *Id.*

## III.   Discussion

The IDB requests a total of $909,459.57 in attorneys' fees and expenses, reflecting the costs it incurred in retaining a total of five law firms—two local and three foreign—and in sending IDB personnel to Brazil and Argentina to meet with counsel there.

The Loan Agreement and the Guarantees clearly require Venti and IMPSA to pay the IDB's attorneys' fees and other costs reasonably incurred in attempting to collect on the Loan Agreement and Guarantees and in bringing this action. The Guarantees expressly commit Venti and IMPSA to reimbursing "all out-of-pocket expenses incurred by IDB in connection with enforcement, collection or any other exercise of remedies under [the] Guarantee Agreement, including attorneys' fees." IMPSA Guarantee § 16.09; Venti Guarantee § 16.09. Separately, Venti and IMPSA agreed to pay all monetary obligations of WPE under the Loan Agreement, *see id.* § 2, which includes "the documented costs and expenses incurred by IDB in relation to . . . the exercise of its rights or powers consequent upon or arising out of the occurrence of any Default, including legal and other professional consultants' fees." Loan Agreement ¶ 3.21(d). The contracts thus are "sufficiently clear" that defendants are obligated to pay reasonable attorneys' fees and other costs of enforcement. *Metro Found. Contractors, Inc.*, 551 F. App'x at 610.

In support of its requested award, the IDB emphasizes that the "total amount of the fees requested is a small fraction of the total size of the judgment," which was roughly $168 million. IDB Br. 6. The IDB is correct that the fact that the requested award reflects about 0.54% of the judgment obtained weighs in favor of the award. *See HSH Nordbank*, 2010 WL 1141145, at *6 (approving fees representing less than 5% of the judgment). Another factor, among the many that courts may consider in awarding attorneys' fees, is the difficulty involved in the representation. *See Krear*, 810 F.2d at 1263 (citing "the difficulty of the questions involved [and] the skill required to handle the problem"). The IDB is correct that this factor, too, weighs strongly in favor of its requested award. Its efforts included the retention of counsel in Argentina

and Brazil, and coordinating among counsel in three countries no doubt required professionalism and skill.

Despite the overall fairness of the sum requested in relation to the judgment secured, the Court also must assess the IDB's submissions at a more particularized level. This is because another important factor is the time and labor expended by the attorneys. *Id.* And, "in determining whether a requested fee is justified by the time and labor expended, the New York courts make their own assessments of the reasonableness of the amount of time spent on the case." *Id.* at 1265. In making that assessment, "[t]he burden is on counsel to keep and present records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required; where adequate contemporaneous records have not been kept, the court should not award the full amount requested." *Id.* Courts also must assess the reasonableness of counsel's claimed hourly rates. *See id.* at 1263; *Arbor Hill*, 493 F.3d at 114 n.3.

### A.    Reductions in the Award

With this guidance in mind, the Court has closely examined the invoices submitted by the IDB and determined that, despite the IDB's general entitlement to attorneys' fees and costs, several modest reductions are needed. Specifically, the Court does not award fees associated with insufficiently documented work performed by BFML, a bulk entry in a DCA invoice, and work done in connection with the instant fees motion.

### 1.    Work Performed by BFML

The invoices submitted by the IDB for work performed by BFML are deficient. *See* Jeronimides Decl., Ex. C. These invoices describe the work done by BFML as "[p]rofessional assistance" or "[l]egal assistance" and list a corresponding fee. *See id.* Similarly the invoices list

"[e]xpenses incurred in connection therewith" and a corresponding sum, but do not specify the nature of those expenses. *See id.* The invoices do not identify the BFML employees who worked on this matter. On the basis of these sparse submissions, the Court is unable to ascertain the reasonableness of the fees and costs incurred by BFML. The Court cannot determine whether the work done by BFML was "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Nor can the Court determine whether the case was appropriately staffed, *e.g.*, whether partners were limited to partner-level work. In light of these deficiencies, the Court does not grant the small portion—$25,695.17—of the IDB's requested award that is attributable to work done by BFML. *See* Jeronimides Decl. ¶ 4.

### 2.    Bulk Legal Fees

Similarly, the July 15, 2015 entry in the DCA invoices for "Professional Fees – Outstanding expenses with local lawyer . . ."—an entry for which DCA billed the IDB $11,585.20[4]—is insufficiently documented. *Id.*, Ex. B. This entry is completely opaque as to the nature of the work performed, the identity of the lawyer, and the number of hours worked.[5] While it may well be possible for the IDB and/or DCA to reconstruct some of that information, it is necessary to submit *contemporaneous* billing records. *HSH Nordbank*, 2010 WL 1141145, at *6 ("Counsel are, of course, required to present detailed contemporaneous billing records."); *Regan v. Conway*, 768 F. Supp. 2d 412, 418 (E.D.N.Y. 2011) (declining to award fees for time

---

[4] This sum reflects a conversion from Brazilian currency into U.S. currency at the rate specified in the invoice.

[5] The invoice for $55,000 payable to the Mintz Group, which is included in the RKO invoices, similarly does not itemize the work performed by timekeeper and task. Jeronimides Decl., Ex. E. However, this invoice reflects not *legal* fees, but outside consultant fees, specifically, those of an outside investigative firm. The same level of documentation is not ordinarily required for such work. The Court is satisfied that the complexity of the litigation and its international character justified the IDB in employing the Mintz Group and incurring the amount of fees indicated.

not recorded contemporaneously).  Because the IDB has not done so, the Court further reduces

the award by $11,585.20.

### 3.    Fees Associated with Bringing Fees Motion

"[A] general contract provision for the shifting of attorneys' fees does not authorize an

award of fees for time spent in seeking the fees themselves." *Krear*, 810 F.2d at 1266.  Of

course, "it is possible to contract for such an allowance but, as it is an agreement contrary to

what is usual, specific language would be needed to show such an agreement." *Id.* at 1267

(quoting *Swiss Credit Bank v. Int'l Bank, Ltd.*, 200 N.Y.S.2d 828, 831 (Sup. Ct. 1960)) (internal

quotation marks omitted).  The contracts at issue here do not provide such specific language, and

thus the fees and costs incurred in seeking attorneys' fees are not properly shifted to the IDB's

adversaries.  Accordingly, the Court denies the request for fees associated with pursuing the

instant motion—a total of $16,275, as documented in the chart below.[6]

| Date | Description | Hours | Rate | Total Fee |
|---|---|---|---|---|
| 9/15/15 | Telephone conference with Mr. Lehtman regarding attorneys' fees. | 0.25 | $387 | $96.75 |
| 9/22/15 | Telephone conference with Messrs. Daniels and Schneider regarding attorneys fees motion. | 0.25 | $387 | $96.75 |
| 9/23/15 | Conducted legal research regarding attorneys' fees; meeting with Ms. Gordon regarding apostilled documents.[7] | 0.75 | $387 | $290.25 |
| 9/23/15 | Telephone conference with Mr. Daniels regarding attorneys' fees motion. | 0.25 | $387 | $96.75 |
| 9/26/15 | Researched recovery of attorney fees and future litigation costs. | 4.00 | $450 | $1,800 |
| 9/27/15 | Researched recovery of attorney fees and future litigation costs. | 5.00 | $450 | $2,250 |

[6] This chart is reconstructed from Jeronimides Decl., Ex. E.

[7] As to this and other entries where the work described encompasses work done in connection with the fees motion as well as work on other tasks, without isolating the amount of work done on each task, the Court has treated the entire time entry as if it were spent on the fees motion.

10

| 9/27/15 | Researched and drafted motion for attorneys' fees. | 2.00 | $387 | $774 |
|---------|---------|------|------|------|
| 9/27/15 | Drafted motion for fees; conducted legal research regarding same. | 3.00 | $387 | $1,161 |
| 9/28/15 | Conducted legal research; telephone call with Mr. Daniels regarding attorneys' fee motion. | 0.50 | $387 | $193.50 |
| 9/28/15 | Revised motion for attorneys' fees. | 0.75 | $387 | $290.25 |
| 9/28/15 | Continued to revise motion for attorneys' fees. | 0.50 | $387 | $193.50 |
| 9/28/15 | Telephone call with Mr. Daniels.[8] | 0.25 | $387 | $96.75 |
| 9/28/15 | Conducted additional research for motion for attorneys' fees. | 0.25 | $387 | $96.75 |
| 9/28/15 | Revised motion for attorneys' fees; conducted legal research. | 1.50 | $387 | $580.50 |
| 9/28/15 | Confer with Ms. Lapetina regarding attorney fees motion; reviewed and revised attorney fees motion; conference with Ms. Laporte regarding discovery. | 2.50 | $650 | $1,625 |
| 9/29/15 | Spoke with Ms. Lapetina regarding redactions to expense documents for filing. | 0.25 | $395 | $98.75 |
| 9/29/15 | Revise draft attorney fee motion and supporting motion; telephone conference with Ms. Jeronomides regarding same; conference with Mr. Lehtman regarding revisions; revised discovery requests; edited restraining notices. | 6.50 | $650 | $4,225 |
| 9/29/15 | Telephone call with Mr. Daniels regarding brief. | 0.25 | $387 | $96.75 |
| 9/29/15 | Telephone call with Mr. Daniels. | 0.25 | $387 | $96.75 |
| 9/29/15 | Drafted declaration in support of attorneys' fees; edited brief. | 0.25 | $387 | $96.75 |
| 9/29/15 | Meeting with Ms. Concha regarding redactions. | 0.25 | $387 | $96.75 |
| 9/29/15 | Various correspondence with potential counsel in Spain, Luxembourg and Malaysia; conferences with Mr. Daniels regarding strategy issues; reviewed and commented on draft motion for fees and expenses; correspondence with Luxembourg counsel regarding initial consultation. | 2.25 | $650 | $1,462.50 |
| 9/30/15 | Compiled and reviewed exhibits at the request of Mr. Daniels. | 1.00 | $230 | $230 |
| 9/30/15 | Reviewed and redacted various expense reports per Ms. Lapetina's request. | 1.00 | $230 | $230 |
| **Total** | | | | $16,275 |

---

[8] Given the full context of the invoice, the Court attributes this vague entry and a similar entry from September 29, 2015 to the fees motion.

**B.** **Work Done by Four Firms Other than BFML**

As to the other four firms engaged by the IDB, the IDB has supplied sufficient

information for the Court to determine the reasonableness of the requested fees. The IDB has

submitted invoices identifying the hourly rates charged by the personnel who worked on this

case and describing the work they performed. *See generally* Jeronimides Decl. The IDB has

separately specified the title, experience level, hourly rates, and hours worked of each law firm

employee. *See* Lapetina Decl. The Court reconstructs this information below:

| CWTP Personnel | Title | Experience | Rate | Hours |
|---|---|---|---|---|
| Ivo Waisberg | Partner | 23 years | $600 | 34.0 |
| Leonardo Amorim Coutinho Fonseca | Senior Associate | 16 years | $380 | 13.75 |
| Livi Kachvartanian Salaro | Senior Associate | 10 years | $380 | 63.25 |
| Ricardo Pomeranc Matsumoto | Partner | 20 years | $380 | 38.0 |
| Gustavo de Lima Palhares | Associate | 4 years | $275 | 2.5 |
| Barbara Pessoa Ramos | Associate | 6 years | $275 | 17.0 |
| Gilberto Gornati | Senior Associate | 9 years | $275 | 15.25 |
| Lucas Rodrigues do Carmo | Associate | 6 years | $275 | 0.25 |
| Stefan Lourenco ce Lima | Associate | 5 years | $275 | 1.75 |
| Bianca Longo Campos | Junior Associate | 3 years | $175 | 0.5 |
| Maria Fernanda Lima | Junior Associate | 3 years | $150 | 2.75 |
| Fernanda Athanagildo Correa | Junior Associate | 3 years | $150 | 79.0 |
| Rodrigo Fonseca Ferreira | Associate | 4 years | $150 | 0.75 |
| Joao Paulo Avallone Pedrazzoli | Junior Associate | 5 years | $150 | 3.75 |
| Luis Marcelo Baroletti de Lima e Silva | Junior Associate | 4 years | $150 | 0.75 |
| Juliana Galvao Rocha de Almeida Prado | Junior Associate | 1 year | $150 | 2.0 |
| Rafael Dell Avanz | Junior Associate | 2 years | $150 | 2.25 |
| Sabrina Francesconi | Junior Associate | 2 years | $150 | 7.25 |
| Camila Yuri Almeida Watanabe | Trainee | 3 years | $90 | 1.5 |
| Douglas Ribeiro de Camargo | Trainee | 3 years | $90 | 7.75 |
| Marcelo Perez de Cunha Lima | Trainee | 2 years | $90 | 2.0 |
| Michelle Ris Mohrer | Trainee | 3 years | $90 | 23.75 |
| Natalia Maria Neves Bast | Trainee | 2 years | $90 | 40.0 |

| DCA Personnel | Title | Experience | Rate | Hours |
|---|---|---|---|---|
| Ivo Waisberg | Partner | 23 years | $690 | 20.75 |

| Ricardo Pomeranc Matsumoto | Partner | 20 years | $690 | 1.5 |
| Bruno Kurzweil de Oliveira | Partner | 13 years | $690 | 28.75 |
| Gilberto Gornati | Senior Associate | 9 years | $410 | 34.75 |
| Fernanda Athangildo Correa | Junior Associate | 3 years | $180 | 44.75 |
| Rodrigo Fonseca Ferreira | Junior Associate | 4 years | $180 | 6.25 |
| Gabriela Andrade Silva | Trainee | 6 months | $80 | 3.0 |

| Clifford Chance Personnel | Title | Experience | Rate | Hours |
|---|---|---|---|---|
| Andrew P. Brozman | Partner | 40 years | $795 | 72.75 |
| Fabricio Longhin | Partner | 20 years | $795 | 2.5 |
| Claude Eischen | Counsel | 10 years | $675 | 0.25 |
| Stefanie Ferring | Counsel | 10 years | $675 | 8.25 |
| Adam Lesman | Associate | 5 years | $565 | 63.0 |
| Leah Edelboim | Associate | 5 years | $531.25 | 8.0 |
| Alberto Haito | Special Legal Consultant | 10 years | $450 | 7.0 |
| Hannes Westendorf | Counsel | Unknown | $348.50 | 1.75 |
| Jill Ruderfer | Unknown | Unknown | $245 | 2.0 |

| RKO Personnel | Title | Experience | Rate | Hours |
|---|---|---|---|---|
| David Daniels | Partner | > 20 years | $650 | 176.25 |
| Jeffrey Lehtman | Partner | > 15 years | $650 | 95.25 |
| Keith Sambur | Partner | > 10 years | $600 | 12.25 |
| Emily M. Kelley | Associate | > 5 years | $485 | 1.5 |
| Maria Lapetina | Associate | > 5 years | $387/$455[9] | 173 |
| Margot Laporte | Associate | > 6 years | $442 | 67.25 |
| Hellen Park | Staff Attorney | > 5 years | $450 | 9.0 |
| Daryl B. Concha | Legal Assistant Supervisor | Unknown | $395 | 23.25 |
| Margaret McGhee | Litigation Support Consultant | Unknown | $336 | 0.75 |
| Michael Schneider | Managing Clerk | Unknown | $294 | 32.25 |
| Hannah Carter | Legal Assistant | Unknown | $230 | 32.75 |
| Gabriella Romanos | Legal Assistant | Unknown | $230 | 6.25 |
| Nathan Ashe | Legal Assistant | Unknown | $230 | 5.25 |
| Casey Gordon | Legal Assistant | Unknown | $230 | 39.0 |
| Jenna Barton | Legal Assistant | Unknown | $230 | 2.5 |
| Alexandria Palacios | Legal Assistant | Unknown | $270 | 4.0 |
| Erin Shields | Legal Assistant | Unknown | $270 | 4.5 |

---

[9] The vast majority of Lapetina's work was billed at $387 per hour. *See* Lapetina Decl. ¶ 7 n.3.

Thus, by the Court's calculation, the IDB requests a total of $590,936.13 in attorneys'

fees for a total of 1,350 hours worked.

### 1.    Hourly Rates

The personnel who worked on this case had various titles:  Partner, Counsel, Senior

Associate, Associate, Junior Associate, Staff Attorney, Trainee, Special Legal Consultant, Legal

Assistant Supervisor, Litigation Support Consultant, Managing Clerk, and Legal Assistant.

Partners working on this case, who had experience ranging from 10 to 40 years, charged

rates ranging from $380 to $795.  Even as to the partners with the highest rates relative to their

experience, such as Keith Sambur ($600 per hour, with more than 10 years' experience) and

Bruno Kurzweil de Oliveira ($690 per hour, with 13 years' experience), these rates are within the

range of reasonable rates for partner-level work in complex commercial litigation in this

District.[10]  *See U.S., ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, No. 12 Civ. 275 (DLC), 2015 WL

1726474, at *3 (S.D.N.Y. Apr. 15, 2015) (approving hourly rate of $836 for partner with 20

years' experience and $631.75 for eighth-year associate); *Amaprop Ltd. v. Indiabulls Fin. Servs.*

*Ltd.*, No. 10 Civ. 1853 (PGG), 2011 WL 1002439, at *5–6 (S.D.N.Y. Mar. 16, 2011) (approving

hourly rate of $616 for partner with 17 years' experience), *aff'd*, 483 F. App'x 634 (2d Cir.

2012) (summary order).

---

[10] The Court is cognizant that CWTP and DCA are based in Brazil.  In general, courts use the hourly rates of the forum district, though the court "may apply an out-of-district rate . . . if, 'in calculating the presumptively reasonable fee[,] . . . it is clear that a reasonable, paying client would have paid those *higher* rates."  *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (emphasis added) (internal quotation marks omitted).  Thus, the Second Circuit, while generally adhering to the "forum rule," does not appear to have addressed—as one district court put it—the "thorny issue of using host district fees to *increase* the presumptively reasonable fee above the amount that counsel would customarily receive from 'paying clients' back home."  *In re AOL Time Warner S'holder Derivative Litig.*, No. 02 Civ. 6302 (CM), 2010 WL 363113, at *13 (S.D.N.Y. Feb. 1, 2010).  However, the *AOL Time Warner* court ultimately adopted the rates proffered by counsel in light of "the complexity of the case."  *Id.* at *20.  The Court takes the same approach here.

As to non-partners:  Counsel at Clifford Chance with 10 years' experience charged $675

per hour; this rate is also within the range of reasonableness for complex litigation.[11]  *See Fox*

*Rx*, 2015 WL 1726474, at *3 (approving hourly rate of $631.75 for eighth-year associate).

Similarly, it was reasonable for Senior Associates with substantial experience to charge up to

$410 per hour; for Associates with around five years' experience to charge up to $565 per hour;

for a Staff Attorney with more than five years' experience to charge $450 per hour; for a Special

Legal Consultant with 10 years' experience to charge $450 per hour; and for Junior Associates to

charge up to $180 per hour.

As to non-legal staff, the rates reflected in the invoices included $395 per hour for a

Legal Assistant Supervisor, $336 per hour for a Litigation Support Consultant, $294 per hour for

a Managing Clerk, up to $270 per hour for Legal Assistants, and up to $90 per hour for Trainees.

The Court approves the $90 hourly rate for Trainees, but reduces the rates for the other positions

because no information has been provided as to the experience level of these employees.  In such

a circumstance, courts generally reduce the rate to the lower end of the range applicable to that

type of work.  *See Malletier v. Artex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 362 (S.D.N.Y.

2010).  Here, the Court reduces the rate for supervisory non-lawyers—Daryl B. Concha,

Margaret McGhee, and Michael Schneider—to $200 per hour.  *See Broad. Music, Inc. v. Pamdh*

*Enters., Inc.*, No. 13 Civ. 2255 (KMW), 2014 WL 2781846, at *6 (S.D.N.Y. June 19, 2014)

(approving $200 hourly rate for experienced "Managing Clerk & Paralegal Supervisor").  For the

same reason, the Court also reduces the rate for Legal Assistants to $100 per hour.  *See Lee v.*

*Santiago*, No. 12 Civ. 2558 (PAE), 2013 WL 4830951, at *8 (S.D.N.Y. Sept. 10, 2013)

---

[11] Although one Counsel at Clifford Chance, Hannes Westendorf, had an unknown amount of
experience, the Court approves his rate—which is substantially lower than that of other
Counsels—in light of his identical title.

(identifying $100 per hour as the typical rate for paralegal work); *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, No. 10 Civ. 5256 (DF), 2012 WL 5816878, at *7 (S.D.N.Y. Nov. 14, 2012) (reducing paralegal rates to $100 per hour in absence of information regarding expertise or experience).  Finally, as to Jill Ruderfer—whose title and experience level are not provided—the Court must reduce her rate to $100 per hour as well.

### 2.    Hours Worked

The Court has reviewed the invoices submitted by the IDB and finds that these invoices reflect sound billing practices:  They are sufficiently thorough, detailed, easy to understand, and do not reveal duplication of effort.  Although the Court has identified some block-billing in the Clifford Chance invoices, the Court, in its discretion, will not order a reduction because it has no "evidence that the hours billed were independently unreasonable or that the block-billing was mixing together tasks that were not all compensable, or not all compensable at the same rate." *Hnot v. Willis Grp. Holdings Ltd.*, No. 01 Civ. 6558 (GEL), 2008 WL 1166309, at *6 (S.D.N.Y. Apr. 7, 2008).

Accounting for the alterations to the hourly rates, the Court reduces the requested award by $20,550, as documented in the chart below.  Multiplying the reasonable rates by the reasonable hours worked thus results in a total of $570,386.13.

| Employee | Requested Rate | Granted Rate | Hours | Reduction in Award |
|---|---|---|---|---|
| Jill Ruderfer | $245 | $100 | 2.0 | $290 |
| Daryl B. Concha | $395 | $200 | 23.25 | $4,533.75 |
| Margaret McGhee | $336 | $200 | 0.75 | $102 |
| Michael Schneider | $294 | $200 | 32.25 | $3,031.50 |
| Hannah Carter | $230 | $100 | 32.75 | $4,257.50 |
| Gabriella Romanos | $230 | $100 | 6.25 | $812.50 |
| Nathan Ashe | $230 | $100 | 5.25 | $682.50 |
| Casey Gordon | $230 | $100 | 39.0 | $5,070 |
| Jenna Barton | $230 | $100 | 2.5 | $325 |
| Alexandria Palacios | $270 | $100 | 4.0 | $680 |

| Erin Shields | $270 | $100 | 4.5 | $765 |
|---|---|---|---|---|
| Total | | | | $20,550 |

## C.   Expenses and Other Issues

The Court has also reviewed the expenses documented in the invoices submitted by the IDB, and finds that they are reasonable and compensable.  Because the Court has identified areas of ambiguity or difficulty in the context of the IBD's generally well-documented and persuasive fee request, however, the Court pauses to explain its assessment of these areas and its reasons for not further reducing the requested award as to them.

First, the costs of legal research tools like Westlaw and Lexis-Nexis are compensable.  Although the Second Circuit at one point indicated that computer research "is not a separately taxable cost," *U.S. for Use & Benefit of Evergreen Pipeline Const. Co. v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996), it has more recently held that, because "the use of online research services likely reduces the number of hours required for an attorney's manual search, thereby lowering the lodestar," such charges may be separately accounted for in a fee award.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 369 F.3d 91, 98 (2d Cir. 2004).  The Circuit continued:  "If [a law firm] normally bills its paying clients for the cost of online research services, that expense should be included in the fee award."  *Id.*  It is not perfectly clear whether the Circuit intended for this condition—that the law firm's normal practice be to bill its paying clients for online research costs—to be a necessary condition for recovery of such charges.  Since then, however, courts in this Circuit have granted awards that included such costs where the invoices submitted in support of the request demonstrated that the costs were actually charged to the requesting party, even where they did not demonstrate the law firm's normal billing practices.  *See, e.g.*, *Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC*,

549 F. Supp. 2d 274, 286–87 (E.D.N.Y. 2008).  Especially in a case like this one—where the fees motion is unopposed, and the research costs are minimal in comparison with the overall requested award—it is appropriate to compensate for research costs actually charged to the IDB by the law firms it engaged.

Second, the Court notes that CWTP in particular staffed this matter with a substantial number of employees—23 in total.  RKO staffed the matter with seven attorneys and 10 non-legal employees. Overstaffing may result in reductions in fee awards.  *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 238 (2d Cir. 1987).  But the question whether overstaffing has occurred is not answered merely by tallying employees; the number of staff must be considered "in the context of the particular issues being litigated at the time," including their complexity and difficulty.  *Handschu v. Special Servs. Div.*, 727 F. Supp. 2d 239, 252 (S.D.N.Y. 2010).  This case surely presented significant complexity and difficulty, particularly given its international dimension.  Thus, while the Court paused to consider the possibility of overstaffing, the Court's assessment of the complexity and scope of the case led it, ultimately, not to reduce the award for this reason.

The Court also notes that the invoices reflect significant travel, meal, and lodging costs. While "expenses relating to travel, including transportation and meals, are routinely recoverable," *Bobrow*, 549 F. Supp. 2d at 287, much of the travel costs in this case were attributable to first-class or business-class airline seats purchased for IDB personnel, *see, e.g.*, Jeronimides Decl., Ex. G, at 3 (first-class trips between Washington, D.C., and Brazil for Cheryl Woolfolk Kfuri[12]).  Indeed, the IDB incurred a total of $120,055.02 travelling to meetings with

---

[12] On the IDB website, Ms. Kfuri is described as the Chief of the Special Assets Unit.  *See* http://www.iadb.org/en/structured-and-corporate-finance/our-team,7533.html (accessed Feb. 9, 2016).

18

counsel in Brazil and Argentina.  Jeronimides Decl. ¶ 6.  Two issues are presented by these expenses: whether it is reasonable to shift the cost of first-class airfare, and whether travel costs incurred by IDB executives are appropriately reimbursed.

As to the first issue, there is some authority for reducing travel costs when parties attempt to shift the cost of first-class airfare. *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 505 (S.D.N.Y. 2009) (reducing travel costs by 20%); *N.S.N. Int'l Indus. N.V. v. E.I. Du Pont De Nemours & Co.*, No. 89 Civ. 1692 (AJP), 1996 WL 154182, at *7 (S.D.N.Y. Apr. 3, 1996) (reducing cost of apparent first-class travel by more than half).  But courts by no means always do so. *See, e.g.*, *Norwest Fin., Inc. v. Fernandez*, 121 F. Supp. 2d 258, 263 (S.D.N.Y. 2000) (not discounting claimed costs despite fact that "in all but two instances, business class [airfare] was utilized for both counsel and witnesses").  Here, in light of defendants' failure to oppose the motion for costs, the Court will not *sua sponte* find these costs unreasonable.

Second, although most cases do not present any need for a party's employees to incur significant expenses, it is clear that the Guarantees accounted for this possibility and provided for such costs to be shifted to the defendants.  Specifically, the defendants agreed to pay "all out-of-pocket expenses incurred by IDB in connection with enforcement, collection or any other exercise of remedies."  IMPSA Guarantee § 16.09; Venti Guarantee § 16.09.  The terms "enforcement" and "collection" are not defined in the Guarantees, but under common usage, they clearly include efforts by IDB personnel to coordinate with local counsel in defendants' home countries, including in-person meetings.  While defendants were free to argue that the IDB sent too many personnel to South America, or that such visits were unnecessary, they have not done so.  The Court accordingly grants the IDB's request to charge defendants with these travel costs.

### D.      Other Potential Fee Awards in this Case

On December 21, 2015, the IDB filed a motion to compel post-judgment discovery under Federal Rule of Civil Procedure 37, Dkt. 53, and requested an award of the fees it incurred in bringing that motion, *id.* at 3.  On December 23, 2015, the Court issued an order stating that it would address the IDB's entitlement to an award of attorneys' fees as part of this fees motion. Dkt. 54.  However, because the IDB has not submitted a declaration demonstrating the fees incurred because of defendants' failure to comply with post-judgment discovery requests, the Court cannot yet rule on this request.  And Rule 37 provides that the Court must give defendants the opportunity to be heard.  Therefore, the Court directs the IDB to provide a declaration supporting its Rule 37 fees request by February 23, 2016, and directs defendants to respond by March 1, 2016.

The IDB has also requested fees and costs associated with bringing an order to show cause for civil contempt for failure to comply with a discovery order, Dkt. 70, but it is also premature to rule on this request.

Aside from the Rule 37 request and the order to show cause, the IDB may have incurred additional attorneys' fees and costs since the filing of the instant motion on September 30, 2015. The Court grants its request for leave to amend the instant motion to reflect such fees and costs.

## CONCLUSION

For the foregoing reasons, the Court reduces the requested award by $74,105.37,[13] and awards the IDB a total of $835,354.20.

---

[13] This sum reflects reductions of $25,695.17 for the insufficiently substantiated BFML invoices; $11,585.20 for the bulk legal fee in the DCA invoice; $16,275 for the fees incurred in connection with the instant motion; and $20,550 for the reduced hourly rates.

The Court directs the IDB to provide a declaration supporting its Rule 37 fees request by February 24, 2016, and directs defendants to respond by March 2, 2016.  The Court grants the IDB leave to amend the instant motion to reflect subsequently incurred fees and costs.

The Court respectfully directs the Clerk of Court to close the motion pending at docket 35.  The IDB is directed to serve this decision on defendants by previously employed means.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: February 17, 2016
New York, New York